UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

THE NEW YORK FOUNDLING HOSPITAL, INC.,

                      Plaintiff,

-against-

RIVERBAY CORPORATION,

                      Defendant.

------------------------------------------------------------X

**Judge Berman**

**07 CV 2846**

COMPLAINT
Civil Action No.



RECEIVED APR 10 2007 U.S.D.C. S.D.N.Y. CASHIERS

## Preliminary Statement

1. Plaintiff, The New York Foundling Hospital, Inc. ("Foundling") is seeking to purchase five units at Co-Op City presently being used for four community residences housing 19 people with mental retardation and/or developmental disabilities and an accessory apartment to those residences. Foundling also plans to take over the management of those residences and accessory apartment, presently owned and operated by Lakeside Family & Children's Services, Inc. ("Lakeside"). However, the defendant, Riverbay Corporation ("Riverbay"), the owner and managing agent of Co-op City has seized upon this proposed change of management and ownership as a means to exclude people with mental retardation and/or developmental disabilities from Co-Op City. The defendant claims that because of the change of management and ownership, the 19 people with mental retardation and/or developmental disabilities in the Co-Op City apartments must be evicted to make way for new tenants. The defendant's position conflicts with a previous agreement it made with a State agency and is aimed at excluding people with mental retardation and/or developmental disabilities from Co-Op City in violation of the

1

Federal Fair Housing Act and the New York State Human Rights Law.

## Jurisdiction

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §3613(a)(1)(B)(2). This Court has supplemental jurisdiction over the State law claim.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) in that all of the parties reside in either New York or Bronx counties, which are located in the Southern District of New York.

## Parties

4. Plaintiff Foundling is a not-for-profit corporation that provides, inter alia, residential services to persons with mental retardation and/or developmental disabilities. Its main offices are located in New York County, New York.

5. Defendant Riverbay Corporation is the owner of Co-Op City. Its main offices are located in Bronx County, New York.

## Facts

6. In 1994, the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") and defendant Riverbay entered into an agreement permitting not-for-profit agencies to purchase units for community residences for people with mental retardation and/or developmental disabilities at Co-Op City.

7. In the agreement, Foundling was one of the not-for-profit agencies permitted to purchase units at Co-Op City.

8. Under the agreement, Riverbay recognized OMRDD's right to place a not-for-profit agency into receivership and assign a residence to another agency without needing formal

consent from Riverbay.

9. Besides Foundling, one of the not-for-profit agencies permitted to purchase units at Co-Op City was Lakeside Family & Children's Services, Inc. ("Lakeside").

10. Lakeside was permitted to purchase the following units at Co-Op City: 120 Einstein Loop, Apartment 2F, 120 Einstein Loop, Apartment 6C, 120 Einstein Loop, Apartment 12F, 120 Einstein Loop, Apartment 26C, and 120 Einstein Loop, Apartment 26F.

11. All of the apartments except for 120 Einstein Loop, Apartment 26C were used by Lakeside for community residences for people with mental retardation and/or developmental disabilities. 120 Einstein Loop, Apartment 26C was an accessory office serving the community residences located in the other units.

12. The four units used for community residences provide permanent housing for 19 persons with mental retardation and/or developmental disabilities.

13. At the time Riverbay entered into the agreement with OMRDD, there were many vacancies at Co-Op City and Riverbay was more than glad to have its vacant apartments filled.

14. Over the past several years and recently, Lakeside has encountered difficulty operating its units in conformity with the requirements of OMRDD.

15. Consequently, in December, 2006, OMRDD brokered a Memorandum of Understanding between Lakeside and Foundling whereby Lakeside would cease operating the Co-Op City units effective January 2, 2007, and Foundling would take over from Lakeside the operation of the Co-Op City community residence units and accessory apartment effective January 2, 2007. Thereafter, under the terms of the Memorandum of Understanding, Foundling and Lakeside would work to secure approval from defendant of the transfer of legal title to the

units to Foundling. The immediate transfer of the operation of the Co-Op City units from Lakeside to Foundling was necessary to ensure the health and safety of the residents of the units.

16. The Memorandum of Understanding was the non-judicial equivalent of the placement of Lakeside into receivership with regard to its interests in the Co-Op City units.

17. On January 2, 2007, Lakeside and Foundling entered into an interim lease agreement permitting Foundling to utilize the abovementioned units for community residence and accessory apartment use.

18. Foundling is now seeking to purchase the apartments formerly operated by Lakeside.

19. With a letter dated December 21, 2006, Steven H. Gold, Riverbay's Director of Residential Sales and Marketing, sent Foundling applications to complete for the transfer of the five units from Lakeside to Foundling.

20. Foundling completed the applications and the applications were considered by the defendant Riverbay.

21. In a letter from Riverbay to Lakeside and Foundling dated March 29, 2007, Riverbay advised Foundling that its Board of Directors had rejected Foundling's applications to purchase the five units and directed Lakeside to vacate and surrender the units.

22. Riverbay advised Foundling that since there was a waiting list of outside persons seeking the Co-Op City units, Co-Op City no longer needed the community residences to fill its units or wanted the community residences.

23. In effect, the defendant is saying that because of the proposed change of ownership of the units, 19 people who are currently residents of Co-Op City must leave their apartments to make way for unknown people who are not currently residents of Co-Op City.

24. The statements made by Riverbay were clear that its Board of Directors seized upon the proposed change of ownership of the units as a way of excluding people with mental retardation and/or developmental disabilities from Co-Op City.

25. The defendant's actions also ignored the agreement between Riverbay and OMRDD whereby Riverbay was required to allow a not-for-profit agency such as Foundling (which already had a presence in Co-Op City) to substitute for another not-for-profit agency in receivership.

26. For all intents and purposes, Lakeside was in receivership with regard to the Co-Op City units and defendant had no discretion but to approve the transfer of the units to Foundling.

27. In seeking to exclude the 19 people with mental retardation and/or developmental disabilities from Co-Op City, the defendant acted upon its intent to remove and exclude persons with mental retardation and/or developmental disabilities from Co-Op City in violation of both the Federal Fair Housing Act and the New York State Human Rights Law.

## COUNT I- FEDERAL FAIR HOUSING ACT

28. The persons who are housed in the Co-Op City residences at issue are people with mental retardation and/or developmental disabilities.

29. Those persons have disabilities that are a cognitive impairment which substantially limit one or more of such person's major life activities and are regarded as such an impairment.

30. Therefore, the people to be housed in the apartment in question have a "handicap" as that term is defined in the Federal Fair Housing Act. 42 U.S.C. §3602(h).

31. Believing that people with a handicap are being discriminated against by the defendants and being a provider of housing for people with disabilities, Foundling is an

"aggrieved person" with standing to sue under the Federal Fair Housing Act. 42 U.S.C. §3604(a), (b).

32. By seeking to evict the 19 people with mental retardation and/or developmental disabilities who currently reside at Co-Op City because of a change in ownership in order to make room for people who do not currently reside at Co-Op City, the defendant is making housing unavailable to people with disabilities because of their disabilities in violation of the Federal Fair Housing Act.

33. In stating that the people with mental retardation and/developmental disabilities were welcome at Co-Op City when there were a considerable number of vacancies but were not welcome now because of a greater demand for housing at Co-Op City, the defendant has expressed its animus towards people with mental retardation and/or developmental disabilities and their intent to evict such people because of their disabilities.

34. In ignoring the agreement between Riverbay and OMRDD permitting a transfer of units from a not-for-profit agency in receivership to another not-for-profit agency, the defendant has demonstrated its animus towards people with mental retardation and/or developmental disabilities.

## COUNT II- NEW YORK STATE HUMAN RIGHTS LAW

35. The persons housed in the Co-Op City residences, people with mental retardation and/or developmental disabilities, are people with a "disability" as that term is defined under the New York State Human Rights Law. Executive Law §292(21).

36. Plaintiff has standing to commence this action on behalf of people with disabilities under the Human Rights Law.

37. For the reasons stated above with regard to the Federal Fair Housing Act, the defendant has violated the New York State Human Rights Law in making housing for people with disabilities unavailable on the basis of disability. Executive Law §296(5)(a)(1),

WHEREFORE, it is respectfully requested of the Court as follows:

1. Enjoin the defendant from taking any steps to evict the residents of the apartments to be acquired by plaintiff Foundling, including terminating the leases on the apartments.

2. Enjoin the defendant from taking any steps to transfer the ownership of the units presently owned by Lakeside to any entity other than Foundling.

3. Enjoin the defendant from continuing to impede the transfer of the units to Foundling and to direct the defendant to provide plaintiff Foundling with all of the paperwork necessary to acquire the units.

4. Order the defendant to approve the transfer of the units from Lakeside to Foundling.

5. Compensatory and punitive damages.

6. Attorneys fees.

Dated: Garden City, New York
April 9, 2007

>MORITT HOCK HAMROFF & HOROWITZ LLP
Attorneys for Plaintiff
By:

_____
ROBERT L. SCHONFELD (RS-7777)
400 Garden City Plaza
Garden City, New York 11530
(516) 542-0088