UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

THE NEW YORK FOUNDLING HOSPITAL, INC.

07 Civ. 2846 (RMB)

Plaintiffs,

-against-

**AFFIDAVIT IN
OPPOSITION TO
INJUNCTIVE RELIEF**

RIVERBAY CORPORATION,

Defendant.

-------------------------------------------------------------------x

STATE OF NEW YORK   }
                    } ss:
COUNTY OF BRONX     }

**VERNON COOPER**, being duly sworn, hereby deposes and states:

1.    I am the General Manager of Riverbay Corporation, more commonly known as Coop City, the defendant in this action. I submit this Affidavit in Opposition to Plaintiff's request for injunctive relief.

2.    On May 4th, 2007, one of Plaintiff's residents assaulted Ms. Sylvia Kantor, a 95 year old resident of Coop City. Ms. Kantor was sitting on a bench talking with her neighbors when Plaintiff's resident snuck up from behind, grabbed her by the neck, lifted her up and over the bench, and threw her to the ground. She has sustained numerous injuries and is afraid to leave her home. The same resident later assaulted an employee of Riverbay. Either the same resident, or occupants of the same group home, assaulted two other residents of Coop City within the last month. One of those residents, also an elderly individual, was pushing her disabled husband (a double amputee) in his wheelchair when she was assaulted

without provocation or warning. The fourth individual was also an elderly resident, who was assaulted in the lobby of their building, [Exhibit A, Incident Report].

3.     Riverbay has been advised that an action for personal injuries will be filed against the corporation.

4.     I contacted Plaintiff on multiple occasions in an effort to resolve this latest situation amicably. Plaintiff refused to do anything, stating that they will not move the offending individuals to another location, nor even disclose their identity. Plaintiff's response was to file this request for injunctive relief.

5.     These incidents are just the latest episodes in a growing trend of problems with the group home units managed by Plaintiff. Prior to the events noted above, Riverbay received 38 reported incidents involving the four (4) group homes which are the subject of this controversy. This number exceeds all complaints for all other group homes combined!

6.     Riverbay repeatedly brought these problems to the attention of the owner, but nothing has been done.

**Background**

7.     Riverbay is a limited profit, Mitchell-Lama housing cooperative, consisting of nearly 16,000 cooperative apartments, providing affordable home ownership for more than 50,000 individuals.

8.     According to the official statistics of the United States Bureau of the Census, the percentage of disabled individuals residing in Coop City is greater than the national average, [See Exhibit B, Census Bureau statistics].

9.      Plaintiff is a not-for-profit agency, but NOT the owner of record of the disputed apartments.   The owner is another not-for-profit entity, Lakeside Family & Children Services.  Lakeside is not a party to this action.

**The 1994 Agreement**

10.     In 1994, Riverbay voluntarily entered into an agreement with the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") to provide housing opportunities for approximately one hundred (100) disabled individuals.  OMRDD is not a party to this litigation.

11.     The 1994 Agreement  provided that the housing units would be adequately staffed and professionally managed by established not-for-profit agencies with experience in the care of disabled individuals, [Exhibit C, 1994 Letter Agreement, paragraphs 9 and 3].

12.     The 1994 Agreement specifically provided that no more than four (4) individuals would occupy any one unit; that individuals whose "disability is known as emotionally disturbed or exhibiting acting out syndrome will not be included among the residents of the apartments"; that "individuals with mental retardation or a developmental disability who are currently harmful to themselves or others will not be placed in Co-Op City residences"; and that "behavior that is not conducive to living in an apartment residential setting will not be included among the residents of the apartments", [Exhibit C, 1994 Letter Agreement, paragraph 1].

13.    Plaintiff, and Lakeside, the owner of record of the disputed units, are violating each and every one of these requirements.[1]

14.    The 1994 Letter Agreement provides that all units under the program are subject to the rules and regulations of Riverbay and that "any purchase and/or transfer of apartments shall at all times be subject to Riverbay's standard policies and DHCR's regulations", including evictions and Riverbay's rules and regulations regarding anti-social behavior, [Exhibit C, paragraphs 15, 18, 19 and 22].

15.    Paragraph 22 of the 1994 Letter Agreement specifically requires Plaintiff to permanently remove disruptive individuals who cause waste or injury to the apartment or residents of Coop City within twenty-four (24) hours of receipt of notice from Riverbay. According to paragraph 22:

> If any individual residing in the apartments becomes disruptive, so as to cause waste or injury to the apartment or creates a situation which interferes with the rights, comfort and convenience of the other residents of the buildings in which the apartments are located, such individual will b e removed permanently from residence in the apartment within twenty-four (24) hours of receipt of notice from Riverbay. OMRDD and/or the Agencies will have an immediate right of appeal, as described below…

[Exhibit C, Paragraph 22].

16.    Plaintiff has refused to comply with this clear and exclusive contractual remedy. Instead, Plaintiff has allowed disruptive individuals to remain in occupancy, causing a continuing and imminent likelihood of injury to Riverbay's residents as evidenced by the recent rash of assaults against elderly and disabled occupants of Coop City.

---

[1] The owner of record, Lakeside, is neither a party to this proceeding, nor an applicant for injunctive relief.

17. Like any other cooperative, Riverbay has a right to review, approve and reject any person or entity which seeks to purchase stock in the housing cooperative.

18. Riverbay's rules, like any other cooperative, provide that an individual or entity shall apply for approval of any stock transfer _prior_ to taking possession of the cooperative apartment.

19. Plaintiff admits that it did not make prior application for approval.

20. Rather, Plaintiff applied to Riverbay for approval of the transfer _after_ taking over possession and control of the apartments.

21. No applicant is allowed to do this, and to the best of my knowledge, no applicant has ever done so since the creation of Coop City in 1968.

22. Plaintiff also admits that it is housing more than four (4) individuals in an apartment in direct violation of the 1994 Agreement. According to Plaintiff's moving papers, the four units which are the subject of this complaint house 19 individuals. [A fifth apartment is used for administrative offices and houses support staff].

23. Plaintiff tacitly acknowledges that there have been numerous problems involving these units. Plaintiff mysteriously states that Lakeside had "difficulty operating its units in conformity with the requirements of OMRDD", without any explanation of what those shortcomings were. Plaintiff has taken over management of the Lakeside units but retained the same staff. Rather than respond to Riverbay's request that individual(s) who are assaulting Riverbay residents be immediately removed, Plaintiff makes the outrageous and unsupported argument that a Riverbay employee is "soliciting" complaints. This

is untrue. Plaintiff respectfully requests that this Court schedule an evidentiary hearing so that we may present live testimony from the individuals who have been physically assaulted and injured by Plaintiff's residents.

24.    Plaintiff also attempts to make an end run around Coop City's rules by relying upon paragraph 35 of the 1994 Agreement. Paragraph 35 only applies when a specific not-for-profit agency is placed into receivership by OMRDD. That has not occurred.

25.    As such, paragraph 35 is not applicable. Further, even if paragraph 35 were applicable, it does not exempt Plaintiff from complying with Coop City's application process, from complying with the other provisions of the 1994 Agreement including the obligation to not place disruptive individuals in Coop City, to remove disruptive individuals within twenty-four hours of a request to do so, to adequately and professionally staff and monitor group homes, and to not house more than four (4) individuals in any unit. Similarly, paragraph 35 does not divest Riverbay of its rights and obligations as a cooperative housing corporation to review and refuse to consent to stock transfers, or to protect its 50,000 residents from assault and disruptive behavior.

26.    Plaintiff also argues, without any admissible evidence to support its claim, that the decision not to approve a transfer of 5 cooperative units to Plaintiff constitutes discrimination against the disabled. This is not true. Riverbay's refusal to approve a transfer of 5 units to Plaintiff, and its request that Plaintiff vacate those apartments, is not based upon discrimination against the disabled. It is based upon Plaintiff's intentional, and admitted failure to comply with the 1994

Agreement; to follow Riverbay's rules and regulations, which are applied uniformly to all applicants; and upon Plaintiff's continuing failure to address disruptive behavior in its units.

27.    The fact that Riverbay provides housing for the disabled at a rate which is greater than the national average is a statistic that Plaintiff chooses to ignore.  In fact, if Plaintiff's 19 residents are removed from the total number of disabled individuals housed at Riverbay,  Coop City we will still provide housing for the disabled at a rate greater than the national average.

28.    The Court's attention is also drawn to the fact that Riverbay has not elected to terminate the entire program pursuant to paragraph 30 of the Agreement.   More than eighty (80) individuals will still continue to participate in the program, and applications for additional, new housing can be made.

29.    Upon information and belief, a balancing of the equities tilts in favor of Riverbay. Plaintiff has failed to comply with Riverbay's established procedures, and has failed to take any action to protect Riverbay's residents from criminal assault. Riverbay must be allowed to protect its residents from assault and disruptive behavior. Plaintiff's intentional refusal to abide by the terms of the 1994 Agreement has left Riverbay with no alternative but to insist that Plaintiff vacate the five units which are the subject of this dispute.

30.    Riverbay has attempted to resolve these problems within the context of the 1994 Agreement.  However, Plaintiff has failed to respond or to take appropriate action to resolve the problem and has, in fact, admitted in its papers to numerous

violations of the 1994 Agreement and Riverbay's standard policies and procedures.

31.    Plaintiff has not removed disruptive individuals as required by the Agreement. Plaintiff has placed disruptive individuals in residence in violation of the Agreement. Plaintiff has admitted to exceeding the maximum number of occupants per unit in violation of the Agreement. Plaintiff has failed to adequately staff, train or monitor its program in violation of the Agreement. Plaintiff has admitted to not seeking prior approval for the transfer of the stock appurtenant to the units in dispute in violation of the Agreement and Riverbay's longstanding policies.

32.    Finally, Plaintiff will not be irreparably injured if Riverbay is allowed to reclaim possession of the apartments in dispute. The simple fact is that Riverbay has a vacancy rate of 1.82 %. This correlates to 281 vacant apartments. In the ordinary course of its business from 1968 to the present Riverbay has always had vacant apartments which total far in excess of the five (5) units which are the subject of this dispute.

33.    Riverbay agrees that during the course of this litigation it will always retain at least five vacant apartments. The fact that Plaintiff will be inconvenienced by the need to find alternative housing does not constitute irreparable injury. However, subjecting Riverbay's residents to the problems created by Plaintiff's failure to comply with its 1994 Agreement has subjected Riverbay's residents to irreparable injury.

34. With the exception of the violent individuals, who should be removed from the premises immediately, Riverbay has requested that Lakeside, the owner of record of the units in dispute, provide Riverbay with an orderly schedule for the safe closedown and surrender of the apartments, [Exhibit D]. Nearly two (2) months later, Lakeside has done nothing.

35. Accordingly, if upon the conclusion of this case this Court were to find that Riverbay's refusal to approve a transfer of five (5) apartments to Plaintiff was improper, Riverbay would provide Plaintiff with five (5) replacement apartments.

**WHEREFORE**, it is respectfully requested that Plaintiff's request for a temporary restraining order and a preliminary injunction be denied. Plaintiff has failed to show a substantial likelihood of success on the merits, that equity favors granting the relief requested, or that Plaintiff would be irreparably harmed.

_Vernon Cooper_
Vernon Cooper

Sworn to before me this
14th day of May, 2007

Notary Public

LINDA M. PUJOLS
Commissioner Of Deeds
City Of New York No. 3-5165
Certificate Filed In Bronx County
Commission Expires April 1, 20 08 .

# Exhibit "A"

```
Printed: 05/08/2007          CO-OP CITY DEPARTMENT OF PUBLIC SAFETY              Page:    1
     At: 16:08:43            2049 BARTOW AVENUE
                             BRONX, NY 10475-
```

---

```
  Entry/CC#: CP-016855-07   Date: 05/04/2007   Time: 17:05    Tour:    2 Desk Officer: P5455
```

---

```
  Call Type..: HARASSMENT                   Priority..: 1   How Received:   TELEPHONE
```

Caller.....: **KANTOR, IRVIN**
Bus. Name..:
Address....: **120 EINSTEIN LOOP N APT# 24D**
City/St/Zip: **BRONX, NY**                                     Call Back #: **(718)379-4596**

---

Location of Assignment: **120 EINSTEIN LOOP N, BRONX APT 24D**
Cross Street.........:
Business Name........: **28B 24D, KANTOR**
Description..........: **ELDERLY FEMALE PUSHED OFF BENCH**
Disposition..........: **R.M.A.**

---

```
     Post: 28        Dispatched: Y   Dispatched Date: 05/04/2007     Call Taker: G4929
```

### VEHICLE'S INVOLVED

Plate & State:               NY
Year/Make/Model/Color:
Vin:

---

### OFFICERS INVOLVED

Serial #: W7140 Rank: PO  Name: CARL  WRIGHT
### UNIT'S INVOLVED
Unit: SP5          Officers: (W7140)
Disp. Time: 17:08 | Arv. Time: 17:19 | Comp Time: 17:48
Rcv'd to Comp:  0:43 :: Disp to Comp:   0:40

---

### ASSOCIATED NUMBERS

Aid Case #     : CP-00162-07

---

### PERSONS INVOLVED

Name.........: KANTOR, IRVIN     DOB:  /  /
Address......: 120 EINSTEIN LOOP N APT# 24D
City/State/Zip: BRONX, NY 10475
Phone Number..: (718)379-4596
Sex..........: M      Race: UNK
Person Type...: CALLER

CONFIDENTIAL

---

Name.........: KANTOR, SYLVIA     DOB:  /  /
Address......: 120 EINSTEIN LOOP N APT# 24D
City/State/Zip: BRONX, NY 10475
Phone Number..: (718)379-4596
Sex..........: F      Race: WHT
Person Type...: AIDED

---

### NARRATIVE

AT TIME AND PLACE OF OCCURRENCE COMPLAINANT STATES THAT WHILE SHE WAS
SITTING ON THE BENCH IN FRONT OF BLDG 28 ABOVE STATED PERP , WHO IS
MENTALLY CHALLENGED , PUSHED HER FROM BEHIND (OFF OF THE BENCH) ONTO THE

Entry/CC#: CP-016855-07   Date: 05/04/2007 Time: 17:05  Tour:   2 Desk Officer: P5455  Page:   2

GROUND CAUSING COMPLAINANT TO SKIN HER KNEE AND HURT HER RIGHT HIP (A
LITTLE AMOUNT OF PAIN)
COMPLAINANT FURTHER STATES THAT SHE KNOWS ABOVE PERP LIVES ON THE 26TH
FLOOR, UNKNOWN APT. COMPLAINANT REFUSED MEDICAL AID INSIDE HER APT
DESCRIPTION OF PERP - MALE WHITE
AGE 18 UNKNOWN NAME, UNKNOWN HAIR LENGTH, UNKNOWN EYE COLOR, WEARING BLUE
JEANS AND A BLACK JACKET
NO FURTHER
REPORT PREPARED
DRM

CONFIDENTIAL

EXHIBIT "B"



## U.S. Census Bureau
### American FactFinder

FACT SHEET

## Zip Code Tabulation Area 10475

View a Fact Sheet for a **race, ethnic, or ancestry group**

**Census 2000 Demographic Profile Highlights:**

| General Characteristics - show more >> | Number | Percent | U.S. | | |
|---|---|---|---|---|---|
| Total population | 38,086 | | | map | brief |
| Male | 16,118 | 42.3 | 49.1% | map | brief |
| Female | 21,968 | 57.7 | 50.9% | map | brief |
| Median age (years) | 41.6 | (X) | 35.3 | map | brief |
| Under 5 years | 2,028 | 5.3 | 6.8% | map | |
| 18 years and over | 30,080 | 79.0 | 74.3% | | |
| 65 years and over | 7,486 | 19.7 | 12.4% | map | brief |
| One race | 36,645 | 96.2 | 97.6% | | |
| White | 10,252 | 26.9 | 75.1% | map | brief |
| Black or African American | 22,654 | 59.5 | 12.3% | map | brief |
| American Indian and Alaska Native | 141 | 0.4 | 0.9% | map | brief |
| Asian | 377 | 1.0 | 3.6% | map | brief |
| Native Hawaiian and Other Pacific Islander | 18 | 0.0 | 0.1% | map | brief |
| Some other race | 3,203 | 8.4 | 5.5% | map | |
| Two or more races | 1,441 | 3.8 | 2.4% | map | brief |
| Hispanic or Latino (of any race) | 9,264 | 24.3 | 12.5% | map | brief |
| Household population | 37,200 | 97.7 | 97.2% | map | brief |
| Group quarters population | 886 | 2.3 | 2.8% | map | |
| Average household size | 2.20 | (X) | 2.59 | map | brief |
| Average family size | 2.91 | (X) | 3.14 | map | |
| Total housing units | 17,677 | | | map | |
| Occupied housing units | 16,923 | 95.7 | 91.0% | | brief |
| Owner-occupied housing units | 6,966 | 41.2 | 66.2% | map | |
| Renter-occupied housing units | 9,957 | 58.8 | 33.8% | map | brief |
| Vacant housing units | 754 | 4.3 | 9.0% | map | |

| Social Characteristics - show more >> | Number | Percent | U.S. | | |
|---|---|---|---|---|---|
| Population 25 years and over | 27,476 | | | | |
| High school graduate or higher | 22,573 | 82.2 | 80.4% | map | brief |
| Bachelor's degree or higher | 5,910 | 21.5 | 24.4% | map | |
| Civilian veterans (civilian population 18 years and over) | 3,058 | 10.1 | 12.7% | map | brief |
| Disability status (population 5 years and over) | 8,858 | 25.0 | 19.3% | map | brief |
| Foreign born | 6,634 | 17.4 | 11.1% | map | brief |
| Male, Now married, except separated (population 15 years and over) | 6,132 | 48.2 | 56.7% | | brief |
| Female, Now married, except separated (population 15 years and over) | 6,516 | 34.9 | 52.1% | | brief |
| Speak a language other than English at home (population 5 years and over) | 9,773 | 27.1 | 17.9% | map | brief |

| Economic Characteristics - show more >> | Number | Percent | U.S. | | |
|---|---|---|---|---|---|
| In labor force (population 16 years and over) | 17,507 | 56.6 | 63.9% | | brief |
| Mean travel time to work in minutes (workers 16 years and older) | 49.5 | (X) | 25.5 | map | brief |
| Median household income in 1999 (dollars) | 40,528 | (X) | 41,994 | map | |
| Median family income in 1999 (dollars) | 51,175 | (X) | 50,046 | map | |
| Per capita income in 1999 (dollars) | 20,785 | (X) | 21,587 | map | |
| Families below poverty level | 675 | 6.8 | 9.2% | map | brief |
| Individuals below poverty level | 3,390 | 9.1 | 12.4% | map | |

| Housing Characteristics - show more >> | Number | Percent | U.S. | | |
|---|---|---|---|---|---|
| Single-family owner-occupied homes | 306 | | | | brief |

| | | | | | |
|---|---|---|---|---|---|
| Median value (dollars) | 189,900 | (X) | 119,600 | map | brief |
| Median of selected monthly owner costs | (X) | (X) | | | brief |
| With a mortgage (dollars) | 1,417 | (X) | 1,088 | map | |
| Not mortgaged (dollars) | 447 | (X) | 295 | | |

(X) Not applicable.
Source: U.S. Census Bureau, Summary File 1 (SF 1) and Summary File 3 (SF 3)

---

The letters PDF or symbol 🗗 indicate a document is in the Portable Document Format (PDF). To view the file you will need the Adobe® Acrobat® Reader, which is available for **free** from the Adobe web site.

**EXHIBIT "C"**

*FINAL VERSION*

April /4 , 1994

State of New York Office of Mental
    Retardation and Developmental Disabilities
Bronx Developmental Services
Eastchester Professional Centre
1695 Eastchester Road
Bronx, New York  10461
ATT:  Levester Cannon, Ed.D.
      Director

Dear Mr. Cannon:

The purpose of this letter agreement is to confirm the
intent of Riverbay Corporation, a New York Corporation, located
at 2049 Bartow Avenue, Bronx, New York  10475 ("Riverbay") and
the Office of Mental Retardation and Developmental Disabilities
of the State of New York, Bronx Developmental Services Office,
located at 1695 Eastchester Road, Bronx, New York 10461
("OMRDD"), in conjunction with voluntary not-for-profit agencies,
to enter into a program to provide approximately one hundred
small individualized residences in Co-Op City.  A list of the
not-for-profit agencies (the "Agencies") is attached hereto as
Exhibit "A".  This list may be amended by OMRDD with Riverbay's
prior written consent, which consent will not be unreasonably
withheld.  Each of the Agencies is eligible to purchase
apartments within Co-Op City in accordance with Article II,
Section 31, paragraph 8-a of the Private Housing Finance Law.

Riverbay is the owner and manager of Co-Op City, a Mitchell-

Lama cooperative housing development formed pursuant to Article II of the Private Housing Finance Law of the State of New York. As such, Riverbay is subject to the rules and regulations of the New York State Division of Housing and Community Renewal ("DHCR"). It is understood that any reference to the rules and/or regulations of DHCR shall also include all other applicable laws and regulations, including but not limited to the Private Housing Finance Law of the State of New York. The Co-Op City complex consists of approximately 15,000 residential units in thirty-five (35) highrise buildings and over 472 townhouse units.

The State of New York is engaged in a program to develop individualized residences certified by OMRDD, and wishes to do so within Co-Op City through contracts with the Agencies. Each residential program in Co-Op City will be certified by OMRDD and will house not more than four individuals in each three-bedroom apartment sold to the Agencies for the residential portion of the program. In addition to these residences, the Agencies will purchase and renovate apartments for administrative offices and non-residential program use which will be accessory to residential use.

OMRDD and the Agencies understand that in providing units to the Agencies Riverbay must comply with the occupancy requirements, the procedures for tenant selection and termination of tenancy set forth in the regulations promulgated by the DHCR (9NYCRR 1727), except where those regulations have been

2

specifically waived by DHCR in accordance with 9NYCRR 1725-2.9.

Riverbay and OMRDD agree that the following procedures will be implemented to accomplish the respective goals of Riverbay, OMRDD, and the Agencies:

1.    **Description of Residential Program.**    Each residential program will be certified by OMRDD as an Individual Residential Alternative ("IRA"), will be operated by the Agencies and will house not more than four (4) individuals with mental retardation or a developmental disability who are primarily members of a class known as City v. Webb.  It is agreed that individuals whose primary disability is known as emotionally disturbed or exhibiting acting out syndrome will not be included among the residents of the apartments.  It is agreed that individuals with mental retardation or a developmental disability who are currently harmful to themselves or others will not be placed in Co-Op City residences.  Additionally, OMRDD attests that the use and occupancy of the apartments will be limited to individuals who qualify for the program (IRA) as it is currently constituted; and furthermore, OMRDD agrees that behavior that is not conducive to living in an apartment residential setting will not be included among the residents of the apartments.  OMRDD proposes a three-phased development covering three (3) New York State fiscal years.

2.    **Program's Three Phases.**  In Phase 1, the Agencies will purchase and renovate thirty-two (32) three-bedroom apartments,

3

four in each of eight buildings located in Co-Op City.  A list of
the apartments is attached to this agreement as Exhibit H.
During the first phase of the program primarily, individuals with
mental retardation or a developmental disability, currently in
New York City Child Welfare Administration Programs will be
transferred to this new program.  During Phases 2 and 3,
individuals with mental retardation or a developmental
disability, may be placed directly into this program.  It is
agreed that OMRDD will also offer to provide residency in the
apartments to individuals with mental retardation and a
developmental disability whose family members reside in Co-Op
City.

3.  **Administrative Offices Accessory to Residential Use.**
The Agencies will purchase and renovate during Phase 1 eight (8)
three-bedroom apartments to be used as administrative offices and
non-residential program use for the program, one in each of the
eight buildings in which the residences are located.  The offices
will be accessory to the residential use of the other apartments
purchased by the Agencies in the buildings.

4.  **Cost.**  On aggregate, the Agencies will pay the
currently approved DHCR rate to purchase the one hundred (100)
apartments and will pay the carrying charges at the annual rate
charged by Riverbay, as same may be adjusted from time to time,
pursuant to the rules and regulations of Riverbay and DHCR.   In

4

addition, the Agencies will also pay the currently approved DHCR
rate for the apartments they will purchase for administrative
offices and non-residential program use which will be accessory
to residential use.   The Agencies will pay the carrying charges
at the annual rate charged by Riverbay for these apartments,
which carrying charge rate may be adjusted from time to time,
pursuant to the rules and regulations of Riverbay and DHCR.

5.   **Renovations.**   OMRDD will provide through contract with
the Agencies all start-up expenses to the Agencies for the
purchase of the apartments and renovations during Phase 1, such
as window guards or adaptations for handicapping conditions, and
furnishings and household supplies for the apartments.   Riverbay
agrees to re-key all apartments purchased to one (1) key per
building and will provide the names of Riverbay's suppliers to
OMRDD and/or the Agencies for the purchase of the construction
materials needed to restore the apartments.   The Agencies agree
to cause the renovations to be performed in a good and
workmanlike manner employing new and first-class materials in
conformance with all government requirements.  Plans, working
drawings and specifications for the work shall be prepared at
OMRDD's sole expense, by a licensed architect or engineer, and
shall be subject to the written approval of Riverbay.   Such
plans, working drawings and specifications shall also be
submitted by the architect on contract with OMRDD and/or the
Agencies to all governmental departments and authorities having

5

jurisdiction thereof and shall be approved by such departments and authorities, including but not limited to the New York City Department of Building.

The Agencies—covenant and agree that all work performed in the apartments shall be in strict compliance with all applicable laws, ordinances, regulations and orders of any federal, state, county, municipal or other governmental authorities having or acquiring jurisdiction thereof. Without limiting the generality of the foregoing, the architect on contract with OMRDD and/or the Agencies covenants and agrees to procure all necessary governmental licenses and permits in advance of the performance of the work, and to procure all necessary governmental approvals, including, where applicable or required, approvals of the New York Board of Fire Underwriters and a Certificate of Occupancy for the demised premises, after completion of the work. The plans and renovation lists for Phase 1 are attached to this agreement as Exhibit G. It is agreed that the renovations will not commence until this agreement has been signed by both parties. It is agreed that the contractors will obtain and provide proof of insurance coverage to OMRDD, Riverbay and DHCR and/or the Agencies prior to commencing renovation work on the apartments, in such amounts as to protect the respective interests of Riverbay, OMRDD, HFA, and/or the Agencies and that Riverbay, DHCR and HFA shall be additional named insureds on all such policies.

It is agreed that the contractors will, to the extent

6

possible, standardize fixtures in the apartments.  OMRDD agrees
to require the Agencies to initially maintain replacement stock
for non-standard fixtures in the administrative apartments in
each building.  It is also agreed that Riverbay will remove the
vinyl asbestos tiles from the apartment floors and turn over the
apartments with the floors stripped, and that any bathtubs or
other fixtures that are removed for replacement from the
apartments will be turned over to Riverbay's Maintenance
Department.  In Phase 1, Riverbay will not be required to paint
the apartments.

6.  **Carrying Charges.**  The Agencies will purchase the stock
for each apartment from Riverbay Corporation.  Riverbay will bill
each Agency on a monthly basis for the cost of the carrying
charges for each apartment purchased and occupied by each Agency.

7.  **Escrow.**  Riverbay, OMRDD and the Agencies agree that
Riverbay may hold the collective equity payment on all the
apartments purchased by each Agency against the cost of restoring
the apartments in which non-ambulatory provisions are made.
Riverbay will exercise this option if Riverbay is unable to sell
the non-ambulatory apartments in "as is" condition.  A list of
the apartments in which non-ambulatory provisions are being made
is attached hereto as Exhibit I.

8.  **Appliances and Carpeting.**  Riverbay agrees to provide

7

the Agencies with vouchers to be used toward the purchase of refrigerators and stoves for each apartment. The Agencies will bear the cost of any upgrades for refrigerators and stoves above the amount provided by Riverbay's voucher. Riverbay agrees to provide its standard carpeting voucher for each apartment purchased.

It is agreed that Riverbay will not provide maintenance on the stoves, refrigerators or dishwashers in the apartments.

9.    **Staffing of the Apartment Residences.** The individuals who will live in the apartment residences will either attend special classes under the Board of Education or attend new day programs to be developed by OMRDD through contract with non-profit agencies. Each apartment residence will be staffed twenty-four (24) hours daily to supervise the individuals in daily care, household activities, mealtimes, and in-home recreational activities. Each apartment residence will be expected to model for the individuals who live in the apartment, as normal as possible, a typical family home environment.

10.    **Selection of Apartments.** Each Agency will meet with the Riverbay Sales Department to select apartments within Co-Op City. The Agencies will choose apartments in different buildings within each section of Co-Op City. The Agencies will complete Riverbay's Residential Application for Corporate/Institutional Cooperators, a copy of which is attached hereto as Exhibit "B".

The Agencies will execute stock purchase agreements and proprietary leases for the apartments and such other forms as are customarily signed by new cooperators, pending approval of the local Community Board.  Copies of the stock purchase agreement and proprietary lease are attached hereto as Exhibits "C" and "D".  The Agencies agree to be bound by the terms of this agreement by signing Riverbay's Residential Application for Corporate/Institutional Cooperators which contains language stating that "the agreement by and between Riverbay Corporation and the State of New York Office of Mental Retardation and Developmental Disabilities dated April     , 1994, is part of the application package and the Applicant/Agency agrees to be bound by its terms."

11.   **Notification of Local Community Board.**  When the specific apartments are selected, OMRDD, with the Agencies, will notify the local Community Board #10 of the intent to operate the apartment residences within Co-Op City.  This is the official notice required by Mental Hygiene Law 41.34.

12.   **Public Meeting Within Co-Op City.**  The Community Board may schedule a public meeting within Co-Op City to present the program and accept questions from Co-Op City residents.  Residents will also be invited to visit other programs sponsored by OMRDD or the Agencies.

13.    **Screening and Hiring Employees from Co-Op City.**    After the Community Board approves the establishment of the apartments, the Agencies will begin to set up the apartments.    Each Agency has also agreed to accept applications and screen to hire employees for these programs from the residents of Co-Op City.

14.    **Neighborhood Advisory Committees.**    As the apartment residences are opened, each Agency will establish a Neighborhood Advisory Committee and will hold an open house to the other residents of the building.    In addition, the Agencies agree to cooperate with Riverbay's requirements regarding building association meetings.

15.    **Agreement Subject to Riverbay's Standard Policies and DHCR Regulations.**    Riverbay, OMRDD and the Agencies agree that Riverbay may change the exhibits attached to this letter agreement as often as it requires, in the ordinary course of its business, provided that all applicants and cooperators are treated uniformly and fairly and that this agreement and any purchase and/or transfer of apartments shall at all times be subject to Riverbay's standard policies and DHCR's regulations. Notice of such change shall be given promptly to OMRDD, pursuant to the notice provision of this agreement.

16.    **Late Notices for Carrying Charges.**    Riverbay agrees that it will use its best efforts to send its standard computer

generated late notice (Exhibit "E") to all Agencies who have failed to pay the carrying charges for the current month, by not later than the 15th day of the current month. Riverbay will send copies of this notice to OMRDD.

17. **Exhibits.** Riverbay, OMRDD, and the Agencies understand that Riverbay may change the forms marked as Exhibits B, C, D and E to this letter as often as it requires, in the ordinary course of its business, provided that all applicants and cooperators are treated uniformly and fairly. Notice of such change shall be given promptly to OMRDD pursuant to the notice provision of this agreement.

18. **Agreement Subject to Riverbay's Standard Policies and DHRC's Rules and Regulations.** Riverbay, OMRDD and the Agencies agree that this agreement and any purchase of units shall at all times be subject to Riverbay's standard policies and DHCR's regulations.

19. **Riverbay's Standard Policy on Collections and Evictions.** Riverbay agrees that it will follow its standard policy on collections and evictions. Riverbay, OMRDD, and the Agencies understand that Riverbay may change such standard policy as often as is required, in the ordinary course of its business, provided that all applicants and cooperators are treated uniformly and fairly. The current general collections policy for

11

non-payment of carrying charges not paid, after notice has been forwarded pursuant to Paragraph 16, is as follows:

    (a)   If carrying charges are not received, in full, by the 10th day of the second month, a three (3) day notice of sums due is served on the non-paying party;

    (b)   If the carrying charges go unpaid for an additional two-week period, an eviction proceeding may be commenced.

20.  **Copies of Notices.**  Riverbay will use its best efforts to provide copies of all notices described in paragraph 19 to OMRDD.

21.  **Payments By OMRDD.**  OMRDD shall have the right to pay, on behalf of any defaulting Agency, any sums owed to Riverbay that have not been paid by the Agency.  However, no such payments may be made on behalf of the Agency after the eviction of the Agency for non-payment.

22.  **Riverbay's Rules and Regulations, Cleaning and Maintenance of the Apartments, Anti-Social Behavior, Twenty-Four Hour Notice.**  The participating Agencies are subject to all of Riverbay's and DHCR's standard rules, policies and regulations. This includes provisions regarding compliance with Riverbay's rules and regulations regarding anti-social behavior.  Any and all matters arising from infractions of such rules and

regulations will be handled pursuant to Riverbay's standard procedures. The Agencies agree to ensure the cleanliness of the apartments. Riverbay specifically recognizes and expressly agrees that OMRDD is vested with the right to enter the apartment residences in order to inspect such premises, and for any other regulatory purposes. Riverbay may request of OMRDD, and OMRDD will not unreasonably withhold permission from Riverbay, to accompany OMRDD on inspection visits. Riverbay may also request OMRDD to make an inspection visit for cause. OMRDD agrees that if Riverbay requests OMRDD to make an inspection visit for cause, such visit must be made within twenty-four hours of Riverbay's request. If OMRDD cannot comply within twenty-four hours, then OMRDD will designate someone from the Agency to accompany Riverbay on the visit. Riverbay will be responsible for maintenance in the apartments from the day the Agency's clients occupy the apartments.

The Agencies agree that if any individual residing in the apartments becomes disruptive, so as to cause waste or injury to the apartment or creates a situation which interferes with the rights, comfort and convenience of the other residents of the buildings in which the apartments are located, such individual will be removed permanently from residence in the apartment within twenty-four (24) hours of receipt of notice from Riverbay. OMRDD and/or the Agencies will have an immediate right of appeal, as described below, upon receiving such written notice from Riverbay.

If an Agency receives a complaint issued by Riverbay's
Security Department, after a complaint is made by a neighboring
cooperator, the Agency will have the option of either paying the
fine attached to the complaint or appealing the complaint.  The
Agency's method of appealing a complaint is as follows.  The
Agency will call Riverbay's Cooperator Services Office or
Riverbay's Legal Department if it wishes to appeal a complaint.
The Cooperator Services Office or Legal Department will set up an
immediate appointment to hear the Agency's appeal and will render
a decision on the complaint.  The Agency will have a further
right of appeal to Riverbay's General Manager, if the Agency
wishes to appeal the decision rendered by Riverbay's Cooperator
Services Office or Riverbay's Legal Department.

23.  **Delegation of Responsibilities.**  OMRDD and the Agencies
understand that they may not delegate any responsibilities
outlined in this letter of understanding to any other party
without Riverbay's written agreement and DHCR's consent, which
consent shall not be unreasonably withheld.

24.  **Interest of Members of Authority/Company, etc.**
Riverbay, OMRDD, and the Agencies covenant that no member of
Congress or of the Legislature of the State of New York, nor of
the local legislative body, head of a department, chief of
bureau, deputy thereof or clerk therein, nor any other employee
of the government of the United States, the State of New York,

14

the municipality in which the project is located, or any
employee, representatives or agent of Riverbay or member of its
Board of Directors is, shall be or become interested, directly or
indirectly, as a contracting party, partner or stockholder for
the realization of profit arising out of the performance of any
contract relevant to the subject program. Neither OMRDD, the
Agencies nor Riverbay or any of its employees, representatives or
agents have given, nor will they give, any person any gift,
gratuity or thing of value, directly or indirectly, in connection
with the award of or administration of this agreement.  Annexed
to this letter as Exhibit F is a copy of THE STATEMENT OF POLICY
OF RIVERBAY CORPORATION CONCERNING STANDARDS OF CONDUCT.
Riverbay, OMRDD, and the Agencies agree to be bound by the terms
of this statement.

    25. **Indemnification.**

The parties agree that to the fullest extent permitted by
law, and in addition to the insurance coverage provisions of
Paragraph 26 below, OMRDD shall defend, indemnify and hold
harmless Riverbay, its members, officers, directors, agents and
employees, against all claims, actions, demands, damages, losses
and expenses, including but not limited to, reasonable attorneys
fees of such parties, judgments and settlements of any nature
whatsoever, arising out of any negligent acts or omissions of
OMRDD in connection with its performance of this agreement and
shall, at the request of Riverbay, assume, without expense to

Riverbay, the defense of any such claims, actions and demands. This paragraph shall only be construed to expand Riverbay's rights, and shall not in any way limit what rights Riverbay might otherwise have.

Riverbay agrees that to the fullest extent permitted by law, it will defend, indemnify and hold harmless OMRDD and/or the Agencies, their members, officers, agents and employees for injuries, death or property damage directly caused by it arising out of any personal injuries, directly caused by Riverbay's negligence during the performance of this agreement. This paragraph shall only be construed to expand OMRDD's and/or the Agencies' rights, and shall not in any way limit what rights OMRDD and/or the Agencies might otherwise have. (See Appendix A to Riverbay Corporation's Residential Application for Corporate/Institutional Cooperators for additional indemnification language.)

26. **Insurance.** OMRDD agrees to provide Riverbay with a letter stating that as a state agency, OMRDD is completely self-insured. See Appendix A to Riverbay Corporation's Residential Application for Corporate/Institutional Cooperators for additional indemnification language.)

27. **Choice of Law and Compliance With Law.** This program will be governed in accordance with the laws of the State of New York that are applicable to transactions to be performed therein.

OMRDD and the Agencies will comply with all municipal, state and federal laws and will obtain any permits for the described activities that may be required by law. All actions against OMRDD will be brought in the Court of Claims and actions against the Agencies will be brought in either the Supreme Court of the State of New York, Bronx County, or in the U.S. District Court for the Southern District of New York. Riverbay and OMRDD, and the Agencies hereby consent to jurisdiction being in said courts.

28. **Severability, Waiver, Modification, Change or Alteration of the Agreement.** (a) If any provision or provisions of this agreement are found to be void or unenforceable, the remaining provisions of this agreement will remain binding and in full force and effect.

(b) Wherever appropriate, the singular shall include the plural and vice versa, and the male gender shall include the female and neuter.

(c) No waiver, modification, change or alteration of the provisions of this program as outlined above or any of the rights or remedies of either Riverbay, OMRDD and the Agencies shall be valid unless such waiver, modification, change or alteration is in writing and signed by the party against whom enforcement is sought. This document merges all prior understandings of Riverbay, OMRDD and the Agencies with respect to the subject matter hereof.

(d) This agreement may be executed in several

17

counterparts, each of which shall constitute an original, but all counterparts shall constitute but one and the same agreement.

(e)  This agreement shall be binding upon and shall inure to the benefit of Riverbay, OMRDD and the Agencies and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns.

29.  **Notice.**  All notices, demands or other communications under this agreement shall be deemed sufficiently given when mailed by registered or certified mail, return receipt requested, addressed as follows:

Riverbay Corporation
2049 Bartow Avenue
Bronx, New York  10475
ATT:  General Manager

State of New York
Office of Mental Retardation
and Developmental Disabilities
c/o Bronx Developmental
Services
1695 Eastchester Road
Bronx, New York  10461
ATT:  Director

30.  **Termination.**  Any party may decide to terminate this program for any reason upon thirty (30) days written notice made to the other party.  Notice will be given in the manner described within this document.  All obligations and commitments shall remain in full force and effect until they have been satisfied or otherwise legally disposed of, released, or discharged by the party they are protecting.  In addition, Riverbay and/or OMRDD may immediately terminate this program for cause upon the occurrence of any of the following events:

(a)  Either party attempts to assign any responsibility

18

under this agreement in whole or in part;

(b) A petition is filed or any proceeding is commenced by or against OMRDD and/or the Agencies or Riverbay for the benefit of creditors;

(c) OMRDD and/or the Agencies or Riverbay makes an assignment for the benefit of creditors;

(d) A receiver is appointed for OMRDD, Riverbay and/or the Agencies or they commit any act of insolvency or become a voluntary or involuntary bankrupt;

(e) OMRDD, Riverbay, and/or the Agencies fail to comply with the terms outlined in this document and its accompanying exhibits.

31. **Non-Discrimination Clauses.** (a) OMRDD and the Agencies agree that they will not discriminate against any employee or applicant for employment because of race, creed, color, sex, national origin, age, disability or marital status.

(b) OMRDD and the Agencies agree to abide by any and all laws, ordinances and regulations concerning non-discrimination in employment.

(c) If directed by the Commissioner, OMRDD and the Agencies will post all notices provided by the Commissioner in a conspicuous place.

(d) All solicitations and advertisements for employees issued by OMRDD and the Agencies shall state that applicants will be afforded equal employment opportunity without discrimination

19

because of race, creed, or color, sex, national origin, age, disability or marital status.

(e)  This program may be canceled, terminated or suspended, in whole or in part, by Riverbay upon a finding by the Commissioner that OMRDD and the Agencies have not complied with these non-discrimination clauses. Moreover, OMRDD and the Agencies may be declared ineligible to participate in future programs made by or on behalf of the State, or a public authority or agency of the State, until Riverbay and OMRDD and the Agencies have satisfied the Commissioner that OMRDD and the Agencies have established and are carrying out a recruitment and hiring program in compliance with the provisions of these non-discrimination clauses. Such a finding may be made by the Commissioner after conciliation efforts by the Commissioner have failed to achieve compliance by OMRDD and the Agencies.


32.  **Approval of the New York State Division of Housing and Community Renewal.** Notwithstanding anything contained herein to the contrary, this agreement shall be of no force or effect until written approval or consent to contract shall have been delivered to Riverbay by the DHCR. Upon receipt of such written approval, Riverbay promptly shall mail a copy thereof to the Agencies in accordance with the notice provision of Section 29. Riverbay shall have the right to terminate this agreement immediately without liability upon notification from the DHCR that any of the terms of the agreement are in violation of any of the regulations

20

of the DHCR or the terms of the mortgage on the premises.

33. **Imposition of Liens.** The Agencies agree to make all payments necessary to avoid imposition of any lien, including mechanic's liens, against Riverbay's premises. In the event of the imposition of a lien, the Agencies shall at their own expense, cause such lien to be released or discharged and shall provide evidence of such to Riverbay and the New York State Housing Finance Agency within thirty (30) days from the filing of such lien.

34. **No Right To Transfer To New Apartments.** OMRDD and/or the Agencies agree that the Agencies shall not have the right to transfer to new apartments, except the accessory apartments, which is a right afforded to cooperators of Riverbay Corporation pursuant to 9NYCRR 1727-1.3.

35. **Stock Transfers.** Riverbay recognizes OMRDD's right to place an Agency into receivership and assign the program to another Voluntary Agency. If any of the Agencies listed on Exhibit A is placed into receivership, OMRDD agrees that Riverbay shall have the right, upon receiving a written request from OMRDD, to review the replacement Agency's credentials and to require the replacement Agency to complete Riverbay's application process, before the Agency placed in receivership shall transfer its stock to the replacement agency.

36.   **Additional Exhibits.**   Appendix A, Standard Clauses For All New York State Contracts, Appendix A: Supplement, and New York State Office of Mental Retardation and Developmental Disabilities, Addendum to Appendix A: Supplement, General Conditions are attached to this agreement and their terms are made a part hereof.

IN WITNESS WHEREOF, Riverbay and OMRDD have executed this agreement as of the date first above written.

Riverbay Corporation

BY: _____
      Iris H. Baez, President


Office of Mental Retardation and
    Developmental Disabilities
BY: _____
      Dr. Levester Cannon, Ed., Director

Exhibit "D"



RIVERBAY CORPORATION, 2049 BARTOW AVENUE, BRONX, NEW YORK 10475
VOICE: (718) 320-3309  FAX: (718) 320-1093  EMAIL: www.riverbaycorp.com

*EXECUTIVE OFFICE*

March 29, 2007

Mr. Harvey Newman
President/CEO
Lakeside Family & Children Services
c/o St. Agatha's Home
135 Convent Road
Nanuet, NY 10954

<div style="margin-left:2em">

Re:    Co-op City Apartments
          120 Einstein Loop, Apt 2F,6C,12F,26C and 26F

</div>

Dear Mr. Newman:

The Riverbay Board of Directors met on March 28, 2007 and decided not to approve your request to transfer the above apartments from Lakeside to the New York Foundling Hospital.

Lakeside must arrange for the vacating of these apartments and the return of the keys to Riverbay. An equity refund check will then be processed to Lakeside.

Kindly contact me so that we can agree on an orderly schedule for the safe closedown and surrender of these apartments.

Very truly yours,

*Vernon Cooper*

Vernon Cooper
General Manager
VC/cc

cc:    William Baccaglini, Executive Director, The New York Foundling Hospital
      590 Sixth Avenue, New York, NY 10011

      Patricia Schuckle, OMRDD
      2400 Halsey Street, Bronx, NY 10461

      Josie Atacio, OMRDD
      2400 Halsey Street, Bronx, NY 10461

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

THE NEW YORK FOUNDLING HOSPITAL, INC.                    07 Civ. 2846 (RMB)

Plaintiffs,

-against-

RIVERBAY CORPORATION,

Defendant.
-------------------------------------------------------------x

## AFFIDAVIT IN OPPOSITION TO INJUNCTIVE RELIEF

### SMITH, BUSS & JACOBS, LLP

Attorney(s) for     Defendant, Riverbay Corporation

**733 YONKERS AVENUE**
**YONKERS, NEW YORK 10704**
**(914) 476-0600**

Service of a copy of the within                      **is hereby admitted.**
Dated,

        **Attorney(s) for**                      ....................................

**Sir: Please take notice**
☐ *NOTICE OF ENTRY*
☐ that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on                      20
*NOTICE OF SETTLEMENT*
that an order                                       of which the within is a true copy will be presented for
settlement to the HON.                              one of the judges

of the within named Court, at
on the          day of                   20     at       M.

Dated,

Signature (Rule 130-1.1-a)

                                        Yours, etc.
                                        **SMITH, BUSS & JACOBS, LLP**
_____       Attorney(s) for
Print name beneath                      Office and Post Office Address
                                        **733 YONKERS AVENUE**
**To**                                  **YONKERS, NEW YORK 10704**
                                        **(914) 476-0600**